Thank you, Your Honor. Good afternoon, and may it please the Court. My name is Ciara Rogers, counsel for Gordon and Stella Beckhart, the appellants in this matter, and the debtors in the underlying bankruptcy case. I would like to reserve seven of my 20 minutes for rebuttal. Your Honor, this case is about the bankruptcy court's power to enforce its orders and award appropriate sanctions. Section 105 of the Bankruptcy Code authorizes a bankruptcy court to issue any order, process, or judgment necessary or appropriate to carry out the provisions of the Bankruptcy Code. That power gives the bankruptcy court the authority to preserve the integrity of the judicial process, resolve disputes orderly and expeditiously. During my time today, I want to make four points to Your Honors. The first is that the district court did not give proper deference to the factual findings made by the bankruptcy court. Second, the bankruptcy court properly interpreted the confirmation order and found that it was not clear or ambiguous. Third, the bankruptcy court considered Taggart and determined that it did not absolve the appellees of their contemptuous conduct in violation of the confirmation— Where did the bankruptcy court do that? I'm sorry, Your Honor? Where did the bankruptcy court do that? The bankruptcy court considered Taggart at length at the evidentiary hearing on June 18, 2020. There is not a reference to Taggart in the bankruptcy court's order granting sanctions against the appellees, but through the exchange between counsel and the judge at the bankruptcy court, there was a conversation about whether or not Taggart applied, and if so, how it would apply. The bankruptcy court seemed fairly confused as to what to do with Taggart, and it didn't say anything in the order about it, and I don't remember reading anything in the order that applied the standards from Taggart. So, in that circumstance, what confidence do we have that the bankruptcy court did indeed apply the appropriate law? Your Honor, I would say the fact that there was an exchange at the evidentiary hearing where there was a discussion about Taggart, what its standard was, there was also a question and answer with Judge Humerkaus and counsel about whether or not she understood the issues as they were raised by the appellees, and during the exchange, appellees acknowledged that Judge Humerkaus had, in fact, interpreted their issue. Counsel, let me ask you a follow-up to Judge Agee's question. I'm looking on pages 17 to 18 of the joint appendix, and this is where the district court says, this is at the bottom of 17, a finding of civil contempt is warranted when there is a demonstration by clear and convincing evidence of, and then it lists four factors on the top of 18, and that's not the Taggart standard that the bankruptcy judge is quoting there. So, I have the same concern as Judge Agee. It doesn't, at least based on the order, it does not look to me that the bankruptcy judge is applying the Taggart standard. So, what do I do if I conclude that's the case? Your Honor, first, I would say that the Taggart standard is applied. Before you get to the Taggart standard, you have to apply the Ashcroft standard of finding of civil contempt, and then if there's a finding of civil contempt, as was done in the bankruptcy court, then determine whether or not there's a fair ground of doubt that was referenced under the Taggart standard, and in Taggart, the court talks about whether there's a continuous violation of the order. In this case, Judge Hermakaus' order does reference a continuing violation. Again, while it does not specifically reference Taggart, I would say that language and using the language from Taggart is her application of the fair ground of doubt Taggart standard. Can I ask you a follow-up? You've mentioned the continuing violation, and this was another question I have about your position. I understand that you think that the creditor violated the plan of confirmation order in numerous respects, but it would be helpful for me, what is the first thing that they did? What is the first moment in time, in your view, where they were in violation of the confirmation order? What was that thing, and when was that thing done? Thank you, Your Honor. The thing that we say was the first time the appellees violated the confirmation order is July of 2014. The appellees, specifically Shell Points, began servicing this of June of 2014, June 25th, I believe, 2014. Immediately thereafter, they sent a letter to say that they had taken over the servicing, and a follow-up letter to say that they found that the Beckharts were $50,000 in arrears under their obligation under the plan. So, we would say that's the first violation of the confirmation order. And what, just a little bit more, what portion of the confirmation order did sending that letter violate? So, if we look at the confirmation order, the confirmation order, it's in the record starting on page 66, Your Honor. And in the order, it says on page 67 that the plan is confirmed subject to the following modifications, and then it provides an amended or an adjusted treatment to BAC home loans. And BAC home loans is the predecessor in interest to both Shell Point and Bank of New York Mellon, both of the appellees in this case. And in that, it says how the secure treatment of BAC would be treated. So, what happened to the arrears as of the time of the bankruptcy? Thank you, Your Honor. So, the arrears were treated in the confirmation order. And this is clear because in the claim 29... What page are we looking at to see that? In the record, it's page 201 and 202, Your Honor. And that's claim 29 that was filed by BAC on February 26, 2010. And that proof of claim, the purpose of the proof of claim is for the creditor to put the debtor as well as the world on notice as to what they say they are owed. And if I can point, Your Honor, to specific sections of the proof of claim form on page 201, the box that's numbered one says the amount of claim as of the date the case is filed. And it lists $432,626.09. And also in that same box at the end, it says check this box if this claim includes interest or other charges in addition to the principal amount of the claim attached an itemized statement. Then on page 202 of the record, Your Honor, as you see, BAC then attached an itemized statement that calculates the arrears. We can see what the amount of the arrears is and what the total amount of the claim was. But in looking at the class non-treatment in the confirmation order, how would we or the creditor know what was to be paid and when and what that covered? So the treatment says that the claim, the secured claim is the lesser amount of the interest due on the petition date. Claim 29 that we were just looking at on page 201 tells us the total amount that was owed on the petition date. And that was BAC's own calculation of what it was owed. So the confirmation order doesn't need to include a some certain. That information was available. And you read the confirmation order, the plan and the claim together to be able to discern that amount. So we know that arrears is included in principal and interest? Yes, Your Honor, because that's the amount that's included in their claim. If you look back on page 201 of the record and box four towards the bottom of that box, it says the amounts of the rear arrearage and other charges as of the time the case is filed, included in secured claim, if any. And then BAC included the $22,836.40, which is the itemized amount from page 201 where they calculated the arrears. I appreciate your explanation. Now, I didn't see that in briefs or anywhere in the district court or the bankruptcy court documents. Was that explanation made? I believe that we talked about in the opening brief to this court, Your Honor, we talked about the total claim. And there was an argument made about the total claim, including the pre-petition arrear. So I believe we did make that argument in our opening brief. But the creditor says, and they can speak for themselves, that we didn't know what to do in terms of the arrears. And we also couldn't tell from the confirmation order what the amount of payment was to be. So with those questions, doesn't that go to the reasonable doubt issue under the contract? I would say yes, but I would say, Your Honor, that that is not a genuine argument. And the reason why is because of the letter that Shell Point sent to the Beckharts on January 15, or that's dated January 15, 2020, and it's in your record starting on page 314. Because in that letter, which is the second letter that they sent to the Beckharts, there was one letter sent in dated December 11, 2019, and then a follow-up letter sent on January 15, 2020. And in the letter, the Shell Point goes through exactly the same process that I just went through to be able to point out to Your Honors what the amount owed was on the effective date of the confirmation order. So it's disingenuous for Shell Point to argue that they couldn't figure it out when they, in fact, figured it out and adjusted the Beckharts' account in an amount equal to 24 monthly payments and essentially brought the account current in January of 2020. And that was before the motion for contempt and sanctions was filed, before there was an evidentiary hearing. They figured it out and applied the same exact logic that I just did to be able to answer that question without any assistance from outside counsel with their internal bankruptcy department. So if they could figure it out... When did they, opposing counsel can also answer, when did they use outside counsel? The evidence or the testimony, excuse me, that was presented before the bankruptcy court is they had done it on a continuing basis over some period of time. As I stand here right now, I don't know when they started and when they stopped seeking advice from outside counsel. But I would suggest, and what we've argued in our briefs, is that looking to outside counsel wasn't necessary when their internal bankruptcy department audited the account beginning in December of 2019 and determined approximately a month later that there had been an error in the servicing and that the servicing did not in fact comply with the confirmation order. That's their... What about their argument about we relied on the advice of counsel for this? Advice is probably wrong, but they relied on it. So I think there's two points to make there, Judge. The first point is that reliance of counsel is not a defense to civil contempt. That's been clear in the Fourth Circuit. I believe this court's opinion in Walters from 1989 says that it's been the longstanding Fourth Circuit authority on that. But also... In a bankruptcy court statement where it says it's always reasonable, I think, to rely upon the advice of counsel. The second part that I would say, Your Honor, is that advice has to be from counsel that's qualified to be able to answer the question. And there's case law in the Fourth Circuit that specifically says you can't hide behind counsel in their omissions. And what I would say here is there's no evidence in the record and there was no evidence before the Bankruptcy Court that the counsel that they sought and got advice from was counsel qualified to interpret a bankruptcy court order. I would suggest that having counsel that maybe does traffic violations wouldn't be the appropriate counsel to seek to interpret this order. And Shell Point put on no evidence that their reliance on counsel, even if they did in fact do that, was reasonable because there was no evidence that the counsel that they relied on was able to interpret this order, had any bankruptcy experience, or would have been able to address the complex nature of a Chapter 11 individual confirmation order. Let me ask you a question I'd just like to have you address in rebuttal. What is the nature of this loss of fresh start damages? And what authority is there for the proposition that the Bankruptcy Court can award that? It looks like some weird combination of emotional distress, which this court has said you can't do, or punitive damages, which the district court said it wasn't doing, or presumed damages, which I'm not sure you can do in this context. So I know your time is up, but if you could address that on your rebuttal, I would appreciate that. Yes, Your Honor. Thank you. Thank you very much, Ms. Rogers. Mr. Chastain? Thank you, Your Honors. Aaron Chastain for the Appellees. May it please the Court. Your Honor, the word Kafka gets used a little too much in legal parlance, but we really think that that's the description of this case. We were never on notice as to what we were required to do under the confirmation order. And throughout this case, we have heard various explanations as to what conduct we were supposed to do. But the problem is, this is not a case about whether we complied with the confirmation order. This is a case under the Taggart standard, as to whether we had any fair ground of doubt as to the meaning. Counsel, here's the dilemma I think. Imagine I think the room for debate about a whole bunch of different things about this order. But there is one thing I think there is no possible room for debate, which is that when your clients pursued the foreclosure action, there is no conceivable argument that that did not violate the confirmation order. So what am I supposed to do with that? I mean, it's continuing with the foreclosure action, even after being on notice that the foreclosure action is no, I mean, I understand the creditor to have acknowledged that it was a mistake to continue with the argument that that didn't violate the confirmation order. So what do I do with that? Well, Your Honor, we respectfully disagree with that. I mean, the dispute one isn't the same. I mean, either they were delinquent and in default on the loan, as we believe they were for a period of a long time, that would call for foreclosure, or they weren't, we were mistaken. Okay, so let me ask you this. We can debate what exactly the confirmation order was supposed to give them. But the one thing that seems very obvious is that it was supposed to give them something. And what concerns me is that your client seemed to proceed under the assumption that the confirmation order gave them literally nothing. I guess one way to say it is, regardless of the position your client is currently advancing, when your client was filing for foreclosure and sending them all of those letters, what benefit at all did you interpret the plan as having given the debtor in this case? Well, Your Honor, I can't speak to what was going through the mind of counsel at the time. But there is a very plausible explanation for the benefit. And that is, there was a period of time during the pending of the bankruptcy that the Beckharts did not have to make any monthly payments. The Beckharts were reorganizing, I think it was 17 different rental properties, liquidating some of them. You know, the original proposed plan had them liquidating this one. It would have been plausible to think that on November 25, 2010, they were going to make a lump sum payment to cure their arrearages, bring the account current, and then pay as the terms of the note dictated on a going forward objectively reasonable for your client to think that the only thing that bankruptcy had given the Beckharts was a pause on having to make payments. But the moment the plan is confirmed, we go right back to where they were vis-a-vis your client. Absolutely, Your Honor. Again, this is a bankruptcy that involved, I think, an upwards of two dozen claims. So if we're looking at this specific one, that's why it sounds sort of far fetched here in hindsight, some 10 years removed. But at the time, I think that was an absolutely reasonable interpretation of what the purpose of this was. And it's consistent with the original proposed plan, which was a proposal for selling a property in liquidation. And so, Your Honor, within the Taggart framework as to whether there was an objectively reasonable basis, absolutely, Your Honor. We think that was an objectively reasonable explanation for the thinking at the time and certainly on a continuing going forward basis. And Your Honors, I really want to walk through what's in that class nine. I know you've looked at it, but even now we keep hearing different interpretations about what's in dispute, there are five elements in class nine. I think that's the easiest way to think about it. There's an element that talks about the adversary proceeding, the lien removed from the property entirely. And so there's a contingency in the class to treat that. They were unsuccessful. We'll take that out. There was the value of the claim. The value of the claim was not in dispute. It was $432,626.09. That was the amount of the claim. There were no post petitions for interest or costs. That was the value of the claim. There was a first payment date. Now, this is the only one that really has any bearing on what we're talking about today. It says the first payment will be November 25th, 2010. How much is that first payment? Nothing. It doesn't say anything about the amount of that first payment. There's default notices. Again, those don't have any bearing on what we're here about. And then you have the savings calls. You have as set as modified here in debtor shall continue to pay creditor's claim according to the original loan terms. So the only one of those that bears on the original loan terms is that first payment date. Okay. So how do we read this? Well, throughout this case, we have heard four different interpretations of how to read this. In their motion for sanctions, they cited the wrong class. So we weren't on notice even when this got started as to which interpretation we were supposed to follow from the beginning. The first one we heard was reamortization of the loan. That was something that was proposed in debtor's counsel's letter to us. It was something that Mr. Becker testified that he thought that's what he got from the confirmation order. Well, the problem is, your honor, that that's absolutely not in there. That's very far removed from what's in the final order. It's what was in the proposed plan, but it's not what's in there. So that's part of my consternation with your position is that the arguments in the lower court seemed to be well, we had our attorneys looking at the proposed plan, which it turns out is different from the order. And so we were getting conflicting advice or bad advice. But now in this court, you're saying, well, even the proposed orders, there's no way we could have known. I mean, I think you made that different argument, didn't you? I mean, the plan is different than the order. That's correct, your honor. I'm sorry. I'm not following. I believe the advice that we saw from external counsel is documented in the record had to do with the final order. I don't think it's centered on the confusion between the proposed plan. I believe testimony was that it was based on the plan. Counsel were giving us interpretations based on the plan and not the order. It was the quote from the testimony below. I think that's your 30 v. 6 witness testifying there. Testifying that the advice of counsel is based on the plan and not the final order. Opposing counsel says that that was ineffective advice. And I guess in effect that that deficiency is attributable to you. Well, let's back up a second and talk about the nature of the advice. We are not arguing that advice of counsel is a blanket defense to civil sanctions. It's not. It is relevant to the inquiry under Taggart as to whether there's a reasonable, objective understanding that would provide a good faith basis for believing. You further would agree, I assume, that subjective good faith is also not an absolute defense. Yes, your honor. That is clear from Taggart. Subjective good faith is not a defense. It's an objective standard. It wasn't reasonably objective. Now, but I will caution your honors, the Second Circuit grappled with this in the Enri Gravel case. They applied the Taggart standard. And in that case, there was an order from a bankruptcy court that declared a debt to be and precluded the creditor from trying to, in any proceeding, dispute that the debt was current. Well, the creditor in Enri Gravel sent notices saying that the debt wasn't current. I think there were late fee notices. The Second Circuit found even that sort of conduct is not sanctionable under Taggart. It found that there was an objectively reasonable basis for dispute in that order. Well, your honor, I use that example because I think our case is so far removed from that. There, it's very clear. I assume you would agree that we wouldn't have to adopt that extreme definition of objective reasonableness to rule for you. Is that what you're going to say? Precisely, your honor. I'm saying if the Second Circuit is willing to say under Taggart, that's not sanctionable. We don't have to go nearly that far to say Taggart has an objectively reasonable standard. And here, we had an objectively reasonable basis for reading the order as we did. Your honor, I will quickly address the argument as to Taggart's application to a Chapter 11 case with a Section 105a basis for injunctions. Your honor, every court that's looked at it, as far as I can tell, has applied Taggart in the Chapter 11 context, and they've applied it in the Chapter 13 context. They've applied it in every context. In fact, outside of bankruptcy, this court has applied Taggart. I made that argument on brief, but she did not make that today. I don't know whether that's waived or not. Yes, your honor, it was in opposing counsel's brief. I've raised it now simply because I won't have another opportunity to raise it. The argument was not raised for the bankruptcy court. It was acknowledged between our counsel and between the bankruptcy judge, but it was not disputed at any point before oral argument in the district court that the Taggart standard would apply. Your honor, I'll walk through the other possibilities for how to read this order, because our case is focused on the Class 9 treatment and the final confirmation order. We would suggest that this court can look at Class 9 in that order and make a determination as to what is the reading, what is this Kafka-esque reading that the bankruptcy court did not even talk about in her order, that no one really talked about in the bankruptcy court during the evidentiary hearing. What am I supposed to make? There's a statement in the bankruptcy court's opinion that your client effectively did not even contest. I mean, the bankruptcy court said you didn't even contest contempt, but I guess that logically encompasses not contesting whether you violated the order. I mean, I guess I'd say my intuition would be you would not be allowed to tell a bankruptcy court we don't contest that we violate the order, and then when you're held in contempt to turn around and argue that you didn't violate the order because that is baiting and switching the bankruptcy judge. So could you first address the question of in the bankruptcy court you even argued that you didn't violate the order? Yes, Your Honor. We contested in the bankruptcy court that it was not a violation under Taggart to do what we did. Hold on. Not a violation of Taggart is different than not a violation of the order? Yes, Your Honor. So where in the bankruptcy court did you actually argue that you didn't violate the order? Your Honor, I'm not sure that argument is in the bankruptcy court. So then how can you turn around and ask us to reverse the bankruptcy court on the grounds that you never even argued to the bankruptcy court that you didn't violate the order? We're asking this court to reverse on the basis that we had an objectively reasonable reading and justification for what we did under Taggart, which is dispositive of the bankruptcy court's order regardless of whether it was a violation of the order or not. We were not even on notice as to what that potential violation of the order could be because it was not asserted in pleadings and it was not asserted at any time in the bankruptcy court. It would have been a pure shot in the dark to say that this is what the order requires and we hit that target. It was a much more reasonable approach to say we're not even sure what the order requires and because the Taggart standard applies with force in that context, we went under Taggart. That argument was preserved in the bankruptcy court. Your Honor, I suggest the bankruptcy judge just made a mistake in drafting this order. I don't think that's any commentary on actually the proceedings or her judgment as to our arguments about Taggart or about the order or anything else. I think maybe it was confused with the simultaneous proceeding in the BSI case or maybe not, but it was just a mistake. What would you say at the end of the day is if we determine, for example, that the bankruptcy court did not follow Taggart and that Taggart is the applicable law, are we to proceed on and in effect go to the merits and reverse with you or do we say the bankruptcy court applied the wrong standard and let it have another shot? Your Honor, we're asking diverse and rendered. Again, it comes down to the language of the confirmation order, which is clearly before this court. There's no factual determinations to make about that language. Reading the confirmation order, what does it require of the parties is what we did a reasonable basis in reaction to that order. Your Honor, we absolutely submit that it was. Again, reamortization is one of the options. That's out. That's not within the constraints of Class 9. A lump sum payment at the end of the loan was the other suggestion. That might be a valid workout option, but it was not what was in the confirmation order. We have forgiveness, and this is now what the Beckharts are arguing that we had an obligation to do in the first place. Your Honor, I encourage you to look at Class 9. There's nothing in Class 9 that says bring the indebtedness current, forgive parts of the loan, bring the escrow back even. We also fixed the interest rate. That's something else we did when we corrected the account. We also, I believe, we didn't reamortize, but we did fix the interest rate to a fixed rate. We granted a retroactive interest rate that was more favorable than the one they would have had under the terms of the loan. To follow up on Judge Agee's question, what do we do if we think that in certain respects, both the bankruptcy court and the district court were wrong? Because, you know, we focused on the bankruptcy court and its failure to discuss Haggard. There's some in the district court's opinion that I'm worried about too. I'm specifically thinking about on page J358 where the bankruptcy court, the district court, excuse me, says undisputed evidence that supports a finding that Shell Point acted in good faith. That sounds really, really, really close to saying that subjective good faith is a defense, which you have conceded, I think correctly, is not a defense to civil contempt. So what do we do if we think that both the bankruptcy court and the district court got things wrong? Your Honor, you absolutely can still reverse. I mean, the contents of your opinion can clarify that subjective good faith is not a defense to the imposition of sanctions. That wouldn't really even require walking back the district court's holding. He's making a factual holding. It just makes it clear there's no legal significance to that holding. So it would be grossly inefficient and frankly unfair to my clients to remand this to start over when this issue was fleshed out. This is not something that took the courts by surprise and now we're having a discussion about Taggart. That was the argument at the hearing. We've had the opportunity to litigate that throughout the case and so now it's time for this. Counsel, what concerns me is that district or bankruptcy court, I'm sorry, listed six different ways that she thought your clients violated the order and why contempt was warranted. And we've, you know, the district court has talked entirely and we're pretty much talking entirely today about kind of one part of that. But there was a lot, there were more reasons for the bankruptcy court and the bankruptcy court heard the testimony, saw the evidence. Contempt is something that, you know, requires that kind of level of familiarity with the case. And it seems like quite a jump for us now to say, well, we can just read the face of the order and know that no one ever could be held in contempt for acting as though there had been no bankruptcy at all and just continuing to try to collect the full sum. Why shouldn't we just send it back to apply the correct standard? Your Honor, those findings in the bankruptcy court's order all stem from the dispute over the treatment of Class 9 and what that at that date, my clients believe that the original loan terms controlled and therefore there was an outstanding indebtedness and immediately owed amount to reinstate the loan. It was past due as in default. Everything else came out of that. It was a binary determination. Were the Beckerts in default? Their position is no, we weren't. We were supposed to be current as of November 25th, 2010 when we made our first payment. And my understanding is, Your Honor, that the bankruptcy court's findings all come from that. And so since that root cause issue is before this court, there's no reason this court can't reverse all those findings by the bankruptcy court. Your Honor, so my time running down, I'll briefly address the other arguments about the sanctions award here in this case. Even if this court is not inclined to agree with the district court that the sanctions were inappropriate, the evidence absolutely doesn't support the amount of damages that were awarded. To refresh this court's recollection, the testimony in the bankruptcy court was that Mr. Beckert spent about 200 hours working on these issues. He specifically said he had 40 hours lost out of his business. He did not at any time provide any sort of financial information as to the actual damages costs that he incurred because he was working through these It's the burden on the party seeking sanctions to put on that evidence, and two, it has to be out of pocket actual losses to be compensable. And so, Your Honor, without any evidence at all, his lost time is not compensable. Even granting every unreasonable inferences in his favor, the most he could have attested to is that he spent 40 hours he would have otherwise spent on his business. As far as what that was worth, all he provided to the court was a single sentence description that because he had two degrees, his time was estimated to be worth $200 an hour. These are courts in this circuit required. Do you mean this court, or do you mean which were, of course, bound by things that this court has said? Or do you mean courts whose decisions that this court is not bound by? This court, in the General Motors case, said the burden was on the party seeking the sanctions to prove it, prove causation and the amount of damages. It believed that there were a few district court cases that adopted that holding, but it was this court and circuit. Without that proof, Your Honors, and again, the burden is on the Beckards here. They're seeking sanctions, and their briefs have argued that we have a duty to prove a negative, to prove he was not actually damaged because he's an entrepreneur and his income is difficult to track. That's not how it works. If they put on evidence as to what his time was worth and made it correspond with his revenue as a person who holds properties and rents them out, then we might be having that discussion because we'd have to rebut it. But that evidence is not right. What is this idea that he can only be compensated for the amount of time that he would otherwise have spent on his business come from? I mean, this sounds awful. I will say reading the record about what this person had to do because he kept getting these notices, it sounds terrible. It sounds miserable. It sounds like the sort of thing that would consume hours and cause tremendous countless. Where does this idea that the only thing he can possibly become, assuming a violation, I agree, I understand you don't agree there's a violation, but assuming that there was a violation of the bankruptcy court's order, it was a violation of the very thing bankruptcy was supposed to have given him, it was wrongfully taken away from him. Where does this idea that he can only be compensated one for one for time that he would have otherwise spent on his business come from? I personally place quite a bit of value on the time I'm not at work. And I would be very, very angry if someone made me spend hours and hours and hours straightening out something that wasn't my fault. It's a fair question, your honor. And it's the reason my wife wants to prepare invoices for the city of Birmingham when they send us bad water bills. But it goes back to a common law doctrine. And I'll be a candidate of the court. This is based on a law review article I read when I was researching writing briefs for this case. It is actually cited in our brief, not directly, but as an internal citation. So I just begged the court's pardon if I miss convey this, it's been a while. But my understanding is there was a common law rule that drew a strict distinction between what was compensable and what was not in the translation. It was not a rule about work time versus leisure time, because it comes from a time when that wasn't really even a clear concept. But the courts have historically for I think 100, 150 years, use that common law principle and applied it to say that for the rule we have today, that's widely accepted in many states that time that you are actually losing economic value, similar to contracts kind of theory is compensable time that you are using on your leisure or any other kind of activity is not something a court can address through sanctions. I see my time is expired. Thank you, honors. Thank you very much, Mr. Chastain. Ms. Rogers, you've got some rebuttal time. Let me ask you again, there was an argument made on brief, I believe that Taggart was not applicable on a chapter 11 setting. Is that still an argument you put forth? Yes, your honor, we have not waived that we believe that that is an argument that this court should consider. And in response to the police argument, where it was made that courts have applied the Taggart standard to chapter 11, I respectfully disagree and say that none of those cases are cited in the briefs. In the gravel case that the issues there were chapter 13 cases, and the injunctions that were at issue was the discharge injunction in a violation of rule 3002.1. Those are very different issues than what we have to win this issue in order to win this appeal. I guess I will say, assume that my reading of Taggart suggests that it is implausible to say that Taggart does not apply to chapter this kind of bankruptcy. If I disagree with you about that, does that mean you lose this appeal? Or can you win this appeal? No, your honor, we still win. And the reason is because there's no fair ground of doubt as to what the confirmation order required ShellPoint to do. And it's no fair ground of doubt because in January of 2020, ShellPoint goes through the process, which they should have done in June of 2014, to determine what their obligations were. So if that even if this court disagrees and finds that Taggart should have a that you made either to the bankruptcy court or the district court in terms of no fair ground of doubt. Yes, your honor, that was made to the district court specifically in the district court's opinion. It says that it disagrees with my argument that Taggart doesn't apply and focused nearly primarily on the fact that the appellees relied on the vice of counsel. I would submit that the district court erred in this reversible error because the cases that it cites are cases related to rule 11 and rule 9011, which aren't applicable to the determination of whether or not there has been a fair ground of doubt on a violation of section 105 of the bankruptcy. Bankruptcy court would have been the founder of fact here. Did you ever make the Taggart no reasonable ground of doubt argument in the bankruptcy court? Yes, there was. That goes back to the discussion I was referring to previously. And in my opening brief to this court, I include a direct site from the transcript about the conversation that was had in the bankruptcy court about Taggart not applying and why it should not apply. Were you part of that conversation or was that counsel for the creditor? I believe all of us were involved. The part of the transcript that cited my brief, I believe, focuses on the conversation between Judge Hummerkous and the appellee's bankruptcy counsel. So, your honors, I would say that I don't have to win Taggart to still win in this case, but there has not been any decision in this circuit on how, why to apply Taggart. And I would suggest that it should be a narrow application. I also want to respond to the question that was asked to me at the end of my opening statements about why the loss of a fresh start is compensable. And I respectfully disagree with the way that the question was posed, that the loss of a fresh start is tantamount to emotional distress damages or punitive damages. This court has specifically said in the, I think it's the Valley Historic case, that the loss of a fresh start in the Supreme Court has said in multiple occasions that the loss of a fresh start is a basic principle of the bankruptcy code. And the loss of the fresh start in the Kirkbride case, which is a case out of the Eastern District of North Carolina, as well as the Bok case, B-O-C-K. How do you, how do you put a dollar number on that? I guess I'm a little troubled by the fact that, that there has to be evidence to support the figure, right? And I don't know where, where do you get the evidence to put a dollar figure on loss of a fresh start if emotional distress and these sorts of things are not what we're talking about? So you have a tangible loss in this case, Your Honor. You have the tangible loss of the erroneous credit reporting. And Mr. Beckhardt testified about the erroneous credit reporting, saying that the account was behind when it was not in fact behind, as well as the erroneous credit reporting, where the athletes have stopped reporting this account on Mr. Beckhardt's credit at all. So he's losing the benefit of on-time monthly payments, which is a way that one's Kirkbride and Bok said was that erroneous credit reporting was a tangible connection to the loss of the fresh start that a dollar figure can be put on. Now there, there is not a magic formula. How would you decide whether that's 10,000, 20,000 or 30,000? I would say that that's a factual finding within the, the, the reading of the record and the evidence before the bankruptcy court, how, how many times these issues occurred, how long these things would be factual determinations that the bankruptcy court had the ability to hear and determine. But I don't think there is a way to say one violation equals X number of dollars, two violations equals Y number of dollars. Well, there, you could imagine a situation where say, this incorrect credit history resulted in being denied a loan or resulted in something that maybe is measurable. In which case you really could find a way that there's evidence to put a dollar figure on, but I don't know. It didn't sound like there was anything like that here. I think there was your honor. The Mr. Beckhart's testimony is that he's an entrepreneur and opposing counsel mischaracterizes his testimony as what his business activities were in the briefs, as well as today, opposing counsel says that Mr. Beckhart's business activities were real estate development. What he ignores is Mr. Beckhart says that he hasn't been doing much real estate development at the time of the evidentiary hearing and his business activities focused on inventing. He creates ideas to fill holes in the market and then brings those ideas to market. That's why his engineering degree has a impact on his ability to, to do his business activities. But also as an entrepreneur, somebody who is looking for funding or who is looking for loans to be able to acquire new real estate, as well as bring products to market, he's going to have to go out to get loans. And I can't quote a specific place in the record, but I believe there was testimony from Mr. Beckhart, where he addresses the fact that he hasn't been able to get loans. I can't, I don't want to say with certainty because I don't, I don't have that page number or anything in my head right now, but I think that there is enough evidence in the record for the bankruptcy court to determine that the erroneous credit reporting that was obviously discussed before it had a tangible impact on the business activities that Mr. Beckhart was able to do. And I see my time is over. Thank you very much, Ms. Rogers. I want to compliment both counsel on their arguments today. As you probably know, it's our custom to come down and greet counsel at the end of the argument, but that's, that's a prohibited activity at this time. So we hope you'll come back in the greet you in person.
judges: G. Steven Agee, Allison J. Rushing, Toby J. Heytens